UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WARRIOR ENERGY SERVICES CORPORATION d/b/a SPC RENTALS, | § § § § § § § § § § § § | CV. NO. 5:14-CV-911-DAE |
| Plaintiff, | | |
| vs. | | |
| JC FODALE ENERGY SERVICES, LLC, | | |
| Defendant. | | |

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is a Motion for Summary Judgment filed by Plaintiff Warrior Energy Services Corporation d/b/a SPC Rentals ("Plaintiff") (Dkt. # 17). The Court held a hearing on the Motion on July 28, 2015. At the hearing, Justin Holmes, Esq., represented Plaintiff. Defendant JC Fodale Energy Services, LLC ("Defendant") did not make an appearance.[1] After careful consideration of Plaintiff's Motion and the arguments presented at the hearing, the Court, for the reasons that follow, **GRANTS** Plaintiff's Motion for Summary Judgment.

---

[1] The Court's courtroom deputy contacted Merritt Clements, Defendant's counsel of record, the week before and the morning of the hearing. Mr. Clements informed the Court that the Defendant would not be filing a response to the motion or appearing at the hearing.

1

BACKGROUND

Plaintiff is a Delaware corporation with a primary place of business in Mississippi. ("Compl.," Dkt. # 1 ¶ 1.) Plaintiff supplies equipment rentals for drilling, completion, and "workover" operations to onshore and offshore oil facilities. (Id. ¶ 6.) Defendant is a Louisiana limited liability company that provides onshore oil and gas drilling services to exploration, production, and disposal companies. (Id. ¶¶ 2, 7.)

In January 2014, Defendant contracted with Plaintiff to rent oil well tools, supplies, and equipment for Defendant's use in its oil and gas-related activities in Texas. (Id. ¶ 8.) Plaintiff rented tools and equipment to Defendant from January 2014 through April 2014. (Id. ¶ 9; "Answer," Dkt. # 6 ¶ 9.) Over the course of this period, Plaintiff sent Defendant nine invoices (collectively, the "Subject Invoices") charging Defendant a total of $80,102.84 for rental of its tools, supplies, and equipment. (Dkt. # 17-1, Ex. 1.) Each of the invoices is addressed to Defendant and is signed by the entry requiring a "Customer-Authorized Agent Signature." (Id.) Warrior Energy has not received any portion of the $80,102.84 balance "despite demand." ("Taylor Aff.," Dkt. # 17-1, Ex. 1 ¶ 3; Compl. ¶ 11.)

Plaintiff filed suit in this Court on October 16, 2014, invoking the Court's diversity jurisdiction. (Compl. ¶ 3.) Plaintiff asserts causes of action for

breach of contract and suit on sworn account.  (Id. ¶¶ 14–23.)  Plaintiff seeks to recover contract damages, costs, and reasonable attorneys' fees.  (Id. at 4.)

Defendant filed a motion to dismiss for lack of subject matter jurisdiction on November 26, 2014 (Dkt. # 6), which this Court denied on February 27, 2015 (Dkt. # 16).  On May 1, 2015, Plaintiff filed the instant Motion for Summary Judgment.  (Dkt. #17.)  Defendant has not filed a response.

## LEGAL STANDARD

A movant is entitled to summary judgment upon showing that "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); see also Meadaa v. K.A.P. Enters., L.L.C., 756 F.3d 875, 880 (5th Cir. 2014).  A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial.  Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc., 738 F.3d 703, 706 (5th Cir. 2013) (quoting Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000)).  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Hillman v. Loga, 697 F.3d 299, 302 (5th Cir. 2012) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence." Tiblier v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." United States v. Renda Marine, Inc., 667 F.3d 651, 655 (5th Cir. 2012) (quoting Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003)).

## DISCUSSION

Plaintiff has affirmatively moved for summary judgment on each of its claims against Defendant.  Defendant has not responded to Plaintiff's Motion. A court may not, however, grant a motion for summary judgment solely on the ground that the non-moving party failed to respond. John v. Louisiana, 757 F.2d 698, 709 (5th Cir. 1985).  Plaintiff must still carry its burden of establishing the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law.  See id.  The Court will address Plaintiff's claims for breach of contract, suit on sworn account, and request for attorneys' fees in turn.

I.   Breach of Contract

The contract at issue here, the Customer Agreement General Terms and Conditions ("Customer Agreement"), contains a choice-of-law provision stating that "the law governing the interpretation of these Terms and any dispute, controversy or claim arising out of, relating to, or in any way connected with these Terms including, without limitation, the existence, validity, performance, breach or termination hereof, shall be determined without regard to any conflicts of law principles according to the State of Texas." (Dkt. # 17-2, Ex. 2 ¶ 6.8.) The Court will therefore apply Texas law to Plaintiff's claims. See Access Telecom, Inc. v. MCI Telecomm. Corp., 197 F.3d 694, 705 (5th Cir. 1999) ("In Texas, contractual choice-of-law provisions are ordinarily enforced if the chosen forum has a substantial relationship to the parties and the transaction."). Under Texas law, to state a claim for breach of contract, a plaintiff must establish "(1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." Bridgmon v. Array Sys. Corp., 325 F.3d 572, 577 (5th Cir. 2003) (quoting Frost Nat'l Bank v. Burge, 29 S.W.3d 580, 593 (Tex. App. 2000)).

   A.   Existence of Valid Contract

"The elements of a valid contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution

and delivery of the contract with the intent that it be mutual and binding." Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631, 636 (Tex. App. 2002).  Here, Plaintiff has provided sufficient evidence to establish that it performed under valid contracts and was damaged as a result of Defendant's breaches.

First, the terms of the Subject Invoices and the Customer Agreement are sufficiently "clear and definite" to constitute valid offers made by Plaintiff. See Parker Drilling Co. v. Romfor Supply Co., 316 S.W.3d 68, 73 (Tex. App. 2010).  Robert S. Taylor ("Taylor"), Plaintiff's Vice President and Treasurer, attests that Plaintiff provided equipment to Defendant between January and April 2014, and that each shipment of equipment was accompanied by an invoice. (Taylor Aff. ¶ 3.)  The Subject Invoices in the record set out the quantity and cost of the tools and equipment provided and include a copy of the Customer Agreement, which provides that the offeree may accept its terms by either signing a "receipt" as defined in the Customer Agreement or by receiving services without providing written notice of non-acceptance of the terms of the Customer Agreement.  (Dkt. # 17-1, Ex. 1; Dkt. # 17-2, Ex. 2 ¶ 1.8.)  Each Subject Invoice and attached Customer Agreement was thus an offer to provide equipment and services on the terms set out in the respective invoices and the Customer Agreement.

Second, the evidence establishes that Plaintiff's offers were accepted by Defendant. Each of the delivery tickets, which were sent with the respective Subject Invoices and set out the quantity and price of the equipment provided, is signed by the entry requiring a "Customer-Authorized Agent Signature." (Dkt. # 17-1, Ex. 1). The Customer Agreement provides that a delivery ticket signed prior to or at the time services are rendered or equipment is delivered is a "receipt," and that signing such a receipt constitutes an acceptance. (Dkt. # 17-2, Ex. 2 ¶¶ 1.5, 1.8.) While Plaintiff has not submitted evidence that the people who signed the delivery tickets were in fact agents of Defendant, the signatures, in combination with Taylor's attestation that Plaintiff sent invoices to Defendant for the equipment provided, are sufficient, in the absence of evidence to the contrary, to establish that Defendant accepted the terms Plaintiff's offers.

Third, there is no indication that Defendant altered the terms of the Subject Invoices or Customer Agreement before accepting Plaintiff's offers, and Defendant's acceptance of the terms offered by Defendant thus constituted a meeting of the minds and established each party's consent to the terms. Finally, the evidence submitted by Plaintiff also establishes delivery and execution of the contracts, again through the signed delivery tickets and Taylor's attestation that Plaintiff sent invoices to Defendant for the equipment provided. (Dkt. # 17-1, Ex. 1; Taylor Aff. ¶ 3.) This evidence is further supported by evidence of the parties'

course of performance under the agreement.  While delivery and execution are generally essential to the validity of a contract, a party may be bound even in the absence of delivery or execution where the actions of the parties reflect a mutual intent to be bound.  <u>Winchek v. Am. Express Travel Related Servs. Co.</u>, 232 S.W.3d 197, 204 (Tex. App. 2007); <u>Brown v. Federated Capital Corp.</u>, 991 F. Supp. 2d 857, 861 (S.D. Tex. 2014) (citing <u>Jones v. Citibank, N.A.</u>, 235 S.W.3d 333, 338–39 (Tex. App. 2007)).  Here, the record evidence shows, and the pleadings do not contest, that Defendant rented tools and equipment from Plaintiff over the course of three months.  (Taylor Aff. ¶ 3; Dkt. # 17-1 Ex. 1; Compl. ¶ 9; Answer ¶ 9.)  This course of performance is consistent with a mutual intent to be bound, and is sufficient to establish the validity of the contracts.[2]

       Defendant's Answer avers, however, that several of the Subject Invoices are illegible.  (Dkt. # 6 ¶ 10.)  "In general, a contract is legally binding only if its terms are sufficiently definite to enable a court to understand the parties' obligations."  <u>Fort Worth Indep. Sch. Dist. v. City of Fort Worth</u>, 22 S.W.3d 831, 846 (Tex. 2000).  "The rules regarding indefiniteness of material terms of a contract are based on the concept that a party cannot accept an offer so as to form a

---

[2] While Defendant's Answer denies that valid and binding contracts exist, Defendant has presented no evidence to establish an issue of material fact as to the validity of the contracts.  (Dkt. # 1 ¶ 15.)  Defendant's allegations alone are insufficient to establish a genuine issue of material fact.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

contract unless the terms of that contract are reasonably certain." Id.  If the terms of an alleged contract are so indefinite that it is impossible for a court to determine the rights and obligations of the parties, it is not an enforceable agreement. Effel v. McGarry, 339 S.W.3d 789, 792 (Tex. App. 2011).

Defendant's Answer does not specify which of the Subject Invoices it finds illegible.  The summary judgment evidence reflects that each of the Subject Invoices contains a bolded entry at the top of first page reading "Amount Due" and setting out a corresponding total, a list of the types and quantities of equipment rented, and the corresponding prices of such rental.  (Dkt. # 17-1, Ex. 1.)  The invoices further include an invoice date, state that they are billed to Defendant, provide the name and location of the well for which the equipment was designated, and provide that the amount is due upon receipt.  (Id.)  Additionally, a legible copy of the Customer Agreement is attached to each Subject Invoice.  (Id.)  The contracts are thus not so indefinite that it is impossible to determine the material terms of the contracts, and are therefore not void as a matter of law.

      B.      <u>Performance Under the Contract</u>

It is undisputed that Plaintiff performed pursuant to the terms of each contract.  Plaintiff alleges, and Defendant admits in its Answer, that Plaintiff performed by renting various drilling tools and equipment to Defendant.  (Compl. ¶ 3; Answer ¶ 9.)  Further, Plaintiff has submitted the affidavit of Taylor, its Vice

President and Treasurer, who attests that Plaintiff rented various tools, supplies, and equipment to Defendant, and invoices charging Defendant for such rentals. (Taylor Aff. ¶ 3; Dkt. # 17-1, Ex. 1.) Plaintiff has thus established that it performed under the terms of the contracts as a matter of law.

    C.    <u>Breach of Contract</u>

A breach of contract "occurs when a party fails to perform an act that it has contractually promised to perform." <u>Greene v. Farmers Ins. Exch.</u>, 446 S.W.3d 761, 765 (Tex. 2014). "A cause of action for breach of a promise to pay arises when a demand for payment has been made and refused." <u>Dorsett v. Cross</u>, 106 S.W.3d 213, 217 (Tex. App. 2003).

Plaintiff has provided sufficient evidence to establish that Defendant has failed to remit any portion of the $80,102.84 it owes to Plaintiff under the terms of the contracts. Pursuant to the terms of the Customer Agreement, by signing each delivery ticket, Defendant agreed to pay the amounts due within 30 days of receiving an invoice. (Dkt. # 17-2, Ex. 2 ¶ 3.2.) The invoices are dated January 30, 2014. (Dkt. # 17-2, Ex. 2 at 12.) Taylor attests that Defendant has failed to pay the amounts due, and that a balance of $80,102.84 "remains due and owing, despite written demand therefor." (Taylor Aff. ¶ 3.) Defendant is thus in breach for its failure to pay the amount due on each invoice within 30 days. Defendant has submitted no evidence to support its denial, asserted in its Answer,

of Plaintiff's allegation that Defendant has refused to pay. Plaintiff's evidence is therefore sufficient to establish that Defendant is in breach of the contracts formed by the Subject Invoices and the terms of the Customer Agreement.

    D.    <u>Damages</u>

Plaintiff has provided sufficient evidence to establish its damages under the contracts. Under Texas law, "[t]he universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained." <u>Teleresource Corp. v. Accor N. Am., Inc.</u>, 427 S.W.3d 511, 524 (Tex. App. 2014) (quoting <u>Stewart v. Basey</u>, 245 S.W.2d 484, 486 (Tex. 1952)). A non-breaching party is entitled to all actual damages necessary to put it in the same economic position in which it would have been had the contract not been breached. <u>CDB Software, Inc. v. Kroll</u>, 992 S.W.2d 31, 37 (Tex. App. 1998). "A party's expectation interest is measured by his anticipated receipts and losses caused by the breach less any cost or other loss he has avoided by not having to perform." <u>Lafarge Corp. v. Wolff, Inc.</u>, 977 S.W.2d 181, 187 (Tex. App. 1998). An expectancy measure of damages does not authorize recovery of expected revenues without also accounting for costs saved. See <u>Kormanik v. Seghers</u>, 362 S.W.3d 679, 690 (Tex. App. 2011) (holding that there was sufficient basis for the jury's refusal to award damages where claimant failed to prove the costs he would have incurred had he been required to fully perform).

Here, the charges in the nine Subject Invoices amount to $80,102.84. Additionally, the Customer Agreement provides that "if payment is not timely made, interest on the outstanding balance shall accrue from the date due until paid in full in the amount of 1.0% per month . . . ." (Dkt. # 17-2, Ex. 2 ¶ 3.3.) The additional contractual interest, calculated at 1.0% simple interest per month outstanding, totals $12,806.21 through July 28, 2015.[3] (Dkt. # 17-2, Ex. 3.) The total amounts to $92,909.05. Additionally, because Plaintiff has submitted evidence that it performed under the terms of each invoice, and there is no evidence that Plaintiff had additional or ongoing contractual obligations, the Court can conclude that Plaintiff did not avoid any costs as a result of Defendant's failure to pay.

While Defendant's Answer denies that Defendant is indebted to Plaintiff for the principal amount, it has submitted no evidence to establish a genuine issue of material fact as to the issue of damages. Plaintiff's evidence is thus sufficient to establish that it has suffered damages totaling $92,909.05 as a matter of law.

---

[3] At the hearing, Plaintiff's counsel represented this figure as the amount outstanding interest as of the date of the hearing. Having reviewed the Subject Invoices and the calculation of interest in the record, the Court finds that Plaintiff has established that there is no dispute of material fact as to the amount of interest owed and that it is entitled to $12,806.21 in interest as of the date of this Order.

Because Plaintiff has submitted evidence establishing each element of its contract claim, the Court finds that there is no genuine dispute of material fact and that Plaintiff is entitled to judgment as a matter of law on its claim for breach of contract. The Court therefore **GRANTS** Plaintiff's Motion for Summary Judgment on this claim.

II.     Suit on Sworn Account

"The essential the elements to prove a sworn account are: (1) that there was a sale and delivery of merchandise or performance of services; (2) that the amount of the account is just, that is, that the prices were charged in accordance with an agreement or were customary and reasonable prices; and (3) that the amount is unpaid." Adams v. H & H Meat Prods., 41 S.W.3d 762, 773 (Tex. App. 2001). Here, Plaintiff has provided sufficient evidence to establish that it is entitled to summary judgment on its claim for suit on sworn account.

First, it is undisputed that Plaintiff rented various tools, supplies, and equipment to Defendant. (Compl. ¶ 9; Answer ¶ 9.) Plaintiff has also submitted the Subject Invoices and the Taylor affidavit to show that Plaintiff delivered products and services to Defendant. (Dkt. # 17-1, Ex. 1; Taylor Aff. ¶ 3.) Second, the charges on the account are in accordance with the amounts agreed to under the Subject Invoices and the Customer Agreement. (See Dkt. # 17-1, Ex. 1; Dkt. #17-2, Ex. 2.) The amounts charged by the invoices total $80,102.84. (See Dkt.

# 17-1, Ex. 1.) Finally, the principal amount remains unpaid. (Taylor Aff. ¶ 3.) Plaintiff has thus established each element of its suit on sworn account, and Defendant has submitted no evidence to the contrary. The Court finds that there is no genuine dispute of material fact, and Plaintiff is entitled to judgment as a matter of law on its claim for suit on sworn account. The Court therefore **GRANTS** Plaintiff's Motion for Summary Judgment as to this claim.

III.   Attorneys' Fees

Plaintiff also seeks to recover its reasonable attorneys' fees. Under Texas law, fees and expenses incurred in prosecuting or defending a suit are not recoverable unless recovery is authorized by statute or contract. See Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc., 612 F.3d 800, 807 (5th Cir. 2010) (citing Baja Energy, Inc. v. Ball, 669 S.W.2d 836, 838 (Tex. App. 1984)). Here, recovery is authorized by both statute and the terms of the Customer Agreement. Texas Civil Practice & Remedies Code § 38.001 permits recovery of reasonable attorneys' fees for prevailing claims based on breach of contract or a suit on sworn account. Tex. Civ. Prac. & Rem. § 38.001(7), (8). Additionally, the Customer Agreement provides that "[Defendant] agrees to pay [Plaintiff] all costs and expenses, including reasonable attorneys' fees and court costs, incurred by [Plaintiff] in enforcing the terms." (Dkt. # 17-2, Ex. 2 ¶ 6.2.)

Texas Courts consider eight factors when determining the reasonableness of attorneys' fees:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on the results obtained or uncertainty of collection before the legal services have been rendered.

Sundance Minerals, L.P. v. Moore, 354 S.W.3d 507, 513–14 (Tex. App. 2011). A trial court is not required to receive evidence on each of these factors. Id. "[A]n affidavit filed by the movant's attorney that sets forth his qualifications, his opinion regarding reasonable attorneys' fees, and the basis for his opinion will be sufficient to support summary judgment, if uncontroverted." Gaughan v. Nat'l Cutting Horse Ass'n, 351 S.W.3d 408, 422 (Tex. App. 2011) (internal quotation marks omitted).

Plaintiff has submitted the affidavit of David Clouston ("Clouston"), Plaintiff's counsel, which sets out the qualifications of the attorneys who have worked on this case and his opinion regarding the reasonableness of the charged

15

fees.  He attests that he is a partner with the firm of Sessions, Fishman, Nathan & Israel, LLC, and has practiced in the State of Texas since 1993.  ("Clouston Aff.," Dkt. # 17-2, Ex. 6 ¶¶ 2–3.)  Clouston's hourly rate on this case is $420.  (Id. ¶ 3.)  Several other attorneys from Clouston's firm have also performed work on this case: Kevin Barreca, a partner; John Person, a senior counsel; and Justin Homes, Leslye Mosley, and Whitney White, who are all associates.  (Id. ¶¶ 4–8.)  Their hourly rates range from $225 to $295.  (Id.)

Clouston attests that attorneys at his firm have reviewed documents, performed investigation and research of claims, and prepared documents including the Complaint, affidavits supporting the claims, the opposition to Defendant's motion to dismiss, initial disclosures, a joint ADR report, and the motion for summary judgment.  (Id. ¶ 9.)  He further attests that the hourly rates charged for the work are those customarily charged for work of this character, and that attorneys' fees in the amount of $24,876.75 have been reasonably incurred.  (Id. ¶¶ 10, 19.)  Defendants have submitted no evidence to contest Clouston's affidavit.  The Court therefore finds that the fees charged by Plaintiff's counsel are reasonable, and **GRANTS** Plaintiff's Motion for Summary Judgment with respect to recovery of its reasonable attorneys' fees in the amount of $24,876.75.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Dkt. # 17).

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, July 28, 2015.

_____
David Alan Ezra
Senior United States Distict Judge